# EXHIBIT A

ESCROW AGREEMENT

THIS ESCROW AGREEMENT (this "**Agreement**") is entered into as of November 23, 2016, by and among Daniel Randolph, an individual ("**Owner**"), Bed Bath & Beyond Inc., a New York corporation ("**Buyer**" and, together with Owner, sometimes referred to individually as a "**Party**" and collectively as the "**Parties**"), and JPMorgan Chase Bank, N.A. (the "**Escrow Agent**"). Capitalized terms not defined herein shall have the meanings assigned to them in the Purchase Agreement (as defined below), provided, however, that the Escrow Agent shall not be deemed to have any knowledge of or duty to ascertain the meaning of any capitalized term not otherwise defined in this Agreement.

RECITALS

WHEREAS, the Parties entered into that certain Purchase Agreement, dated as of November 21, 2016 (the "**Purchase Agreement**"), with PersonalizationMall.Com, Inc., an Illinois corporation (including any successor in interest, the "**Company**") and Phenom Holding Corp., a Florida corporation ("**Seller**"), pursuant to which, among other things, Buyer purchased from Seller all of the outstanding equity interests of PersonalizationMall.Com, LLC, the Company's successor in interest; and

WHEREAS, the Purchase Agreement provides that a portion of the Purchase Price shall be deposited by Buyer into escrow to be held and distributed by the Escrow Agent in accordance with the terms of this Escrow Agreement.

NOW THEREFORE, in consideration of the foregoing and of the mutual covenants hereinafter set forth, the Parties and the Escrow Agent hereto agree as follows:

1.     **Appointment**.  The Parties hereby appoint Escrow Agent as their escrow agent for the purposes set forth herein, and Escrow Agent hereby accepts such appointment under the terms and conditions set forth herein.

2.     **Fund; Investment.**

(a)     Contemporaneously with the execution and delivery of this Agreement, Buyer agrees to deposit with Escrow Agent the sum of (i) ██████████████████████ in immediately available funds as security for any adjustment to the Purchase Price pursuant to Section 3.3 of the Purchase Agreement (the "**Adjustment Escrow Amount**"), (ii) ████████████████████████ ██████████████ in immediately available funds as security for Owner's and Seller's indemnification obligations pursuant to Article VIII of the Purchase Agreement (other than Section 8.2(c)(ii) and Section 8.2(h) of the Purchase Agreement) (the "**Indemnification Escrow Amount**"), (iii) ██████████████ █████████████ in immediately available funds as security for Owner's and Seller's indemnification obligations pursuant to Section 8.2(h) of the Purchase Agreement (the "**Special Indemnity Escrow Amount**") and (iv) nine million ninety-three thousand five hundred twenty-six U.S. dollars ($9,093,526) in immediately available funds as security for Owner's and Seller's indemnification obligations in respect of any Unpaid Sales Taxes pursuant to Section 8.2(c)(ii) of the Purchase Agreement (the "**Special Tax Escrow Amount**" and, together with the Adjustment Escrow Amount, the Indemnification Escrow Amount and the Special Indemnity Escrow Amount, the "**Escrow Deposit**").  Escrow Agent shall hold the Escrow Deposit in one or more demand deposit accounts and shall invest and reinvest the Escrow Deposit and the proceeds thereof, including all interest, dividends, gains and other income (together with the Escrow Deposit, the "**Fund**") in a JPMorgan Money Market Deposit Account ("**MMDA**") or a successor investment offered by Escrow Agent.  For the avoidance of doubt, any interest, dividends, gains

*[Signature Page to Escrow Agreement]*

and other income earned on the Fund shall be allocated proportionally among the Adjustment Escrow Amount, Indemnification Escrow Amount, Special Indemnity Escrow Amount and Special Tax Escrow Amount as if each such amount were a wholly separate account, including, without limitation, in connection with the release of the funds held in any such account hereunder. The MMDA has rates of interest or compensation that may vary from time to time as determined by the Escrow Agent. Instructions to make any other investment ("**Alternative Investment**"), and any instruction to change investments must be in a joint writing and executed by an Authorized Representative (as defined in Section 3(e) below), of each of the Parties and shall specify the type and identity of the investments to be purchased and/or sold.

(b)     The Escrow Agent is hereby authorized to execute purchases and sales of investments through the facilities of its own trading or capital markets operations or those of any affiliated entity and the Escrow Agent or any affiliated entity may act as counterparty with respect to such investments. Escrow Agent will not provide supervision, recommendations or advice relating to either the investment of moneys held in the Fund or the purchase, sale, retention or other disposition of any investment described herein, and each Party acknowledges that it was not offered any investment, tax or accounting advice or recommendation by Escrow Agent with regard to any investment and has made an independent assessment of the suitability and appropriateness of any investment hereunder for purposes of this Agreement. Market values, exchange rates and other valuation information (including without limitation, market value, current value or notional value) of any Alternative Investment furnished in any report or statement may be obtained from third party sources and is furnished for the exclusive use of the Parties. Escrow Agent has no responsibility whatsoever to determine the market or other value of any Alternative Investment and makes no representation or warranty, express or implied, as to the accuracy of any such valuations or that any values necessarily reflect the proceeds that may be received on the sale of an Alternative Investment. Escrow Agent shall not have any liability for any loss sustained as a result of any investment made pursuant to the terms of this Agreement or as a result of any liquidation of any investment prior to its maturity or for the failure of an Authorized Representative of the Parties to give Escrow Agent instructions to invest or reinvest the Fund. Escrow Agent shall have the right to liquidate any investments held in order to provide funds necessary to make required payments under this Agreement.

(c)     Notwithstanding anything herein to the contrary, Buyer and Owner agree that, for U.S. federal, state and local income tax purposes, Seller (as identified on Schedule 3, attached hereto) will be treated as the owner of the Fund. All interest or other income earned under this Agreement shall be allocated to Seller for the calendar year in which such interest or income is earned and reported, by Escrow Agent to the IRS, or any other taxing authority, on IRS Form 1099 or 1042S (or other appropriate form) as income earned from the Escrow Deposit by Seller whether or not said income has been distributed during such calendar year. The Parties will furnish the Escrow Agent with Seller's W-9 form in order for the Escrow Agent to do income reporting to the IRS. The Escrow Agent shall, pursuant to written instructions from Owner (a copy of which shall be sent contemporaneously to Buyer), make a distribution to Seller (i) on or prior to (x) January 31, 2017 (and on or prior to January 31 of any subsequent year that precedes the termination of this Agreement pursuant to Section 3(f)) and (y) the termination of this Agreement, pursuant to Section 3(f) and (ii) in an amount equal to 40% of the aggregate income earned on the Fund during the preceding calendar year. The Parties hereby represent to Escrow Agent that no other tax reporting of any kind is required given the underlying transaction giving rise to this Agreement.

3.      **Disposition and Termination.**

2

(a) <u>Disbursements of the Adjustment Escrow Amount</u>.

(i) Upon a final determination of the Purchase Price and Actual Adjustment pursuant to Section 3.3 of the Purchase Agreement, Owner and Buyer shall submit a joint written instruction letter to the Escrow Agent in substantially the form of <u>Exhibit A-1</u>, specifying the amount, if any, to be paid by Seller or Owner to Buyer pursuant to Section 3.3(i)(ii) of the Purchase Agreement (the "**Purchase Price Adjustment**"). The Escrow Agent shall, within two (2) Business Days, or as soon as practicable thereafter, following receipt of such joint written instruction letter, deliver to Buyer via wire transfer of immediately available funds to the account designated by Buyer, an amount equal to such Purchase Price Adjustment out of the amount of the Fund representing the Adjustment Escrow Amount.

(ii) The Escrow Agent shall, within two (2) Business Days, or as soon as practicable thereafter, following receipt of the joint written instruction letter delivered pursuant to Section 3(a)(i) above, and following delivery of the Purchase Price Adjustment, if any, to Buyer, deliver to Seller via wire transfer of immediately available funds to the account designated by Owner, any portion of the Fund representing the Adjustment Escrow Amount then remaining.

(b) <u>Disbursements of the Indemnification Escrow Amount</u>.

(i) Losses for which a Buyer Indemnified Party is entitled to indemnification under Article VIII of the Purchase Agreement (other than Section 8.2(c)(ii) and Section 8.2(h) of the Purchase Agreement) shall be paid from the Fund representing the Indemnification Escrow Amount as provided in this Section 3(b). If a Buyer Indemnified Party wishes to make a claim against the Fund representing the Indemnification Escrow Amount pursuant to Article VIII of the Purchase Agreement (an "**Indemnification Claim**"), then Buyer shall, on its own behalf or on behalf of another Buyer Indemnified Party, deliver written notice of such Indemnification Claim in the form of <u>Exhibit A-2</u> (an "**Indemnification Claim Notice**") to Escrow Agent in accordance with Section 3(e) below (with a copy delivered contemporaneously to Owner in accordance with Section 8 hereunder). Each Indemnification Claim Notice shall set forth: (A) the specific representation and warranty of the Company, Owner or Seller alleged to have been inaccurate or breached or other specific circumstance entitling the Buyer Indemnified Party to such indemnification; (B) if known, a reasonably detailed description of the facts and circumstances giving rise to the alleged inaccuracy in or breach of such representation and warranty or other specific circumstance entitling the Buyer Indemnified Party to such indemnification; and (C) if known or reasonably estimable, the aggregate dollar amount of the Losses that have been, or are reasonably expected to be incurred and for which the Buyer Indemnified Party is seeking indemnification hereunder (the aggregate amount of such estimate being referred to as the "**Claimed Indemnification Amount**"). For the avoidance of doubt, Buyer shall be entitled to amend any Indemnification Claim Notice, including, if applicable, the Claimed Indemnification Amount set forth therein (by indicating, if known or reasonably estimable, the aggregate dollar amount of the Losses that have been, or are reasonably expected to be incurred), at any time during which any funds remain in the Fund representing the Indemnification Escrow Amount.

(ii) The Escrow Agent shall only release all or any portion of a Claimed Indemnification Amount from the portion of the Fund representing the Indemnification Escrow Amount with respect to any Indemnification Claim: (A) upon the termination of the Indemnification Response Period if Owner fails to deliver an Indemnification Response Notice during such time in accordance with Section 3(b)(iii); (B) upon the Escrow Agent's receipt of an Indemnified Person Payment Release Notice in accordance

3

with Section 3(b)(iv); or (C) upon the Escrow Agent's receipt of a Claim Resolution Notice in accordance with Section 3(b)(v).

(iii) During the 30-day period commencing on the day after the date of receipt by the Escrow Agent of an Indemnification Claim Notice (or such additional 30 days commencing on the day of receipt by Escrow Agent of any amendment to a previously submitted Indemnification Claim Notice) (the "**Indemnification Response Period**"), Owner may deliver to Buyer and the Escrow Agent, no later than 5:00 P.M. New York time on the 30th day of the Indemnification Response Period a written response (the "**Indemnification Response Notice**") in which Owner: (i) agrees that the full Claimed Indemnification Amount is owed to Buyer; (ii) agrees that part (but not all) of the Claimed Indemnification Amount is owed to Buyer; or (iii) asserts that no part of the Claimed Indemnification Amount is owed to Buyer. Any Indemnification Response Notice contemplated by clause (ii) or (iii) shall include a reasonably detailed description of Owner's reasons for such objection and indicate the amount in dispute if less than the entire Claimed Indemnification Amount. Any part of the Claimed Indemnification Amount that is not agreed by Owner to be owed to Buyer shall be referred to as the "**Contested Indemnification Amount**." If Owner fails to deliver a timely Indemnification Response Notice within the applicable Indemnification Response Period (or as may be extended by the receipt of an amendment to the original Indemnification Claim Notice), the Escrow Agent shall release to Buyer within two (2) Business Days, or as soon as practicable thereafter, the entire Claimed Indemnification Amount from the Fund representing the Indemnification Escrow Amount (or such lesser amount as may remain in the Fund representing the Indemnification Escrow Amount).

(iv) If prior to the expiration of the Indemnification Response Period Owner delivers an Indemnification Response Notice to Buyer agreeing that all or any part of the Claimed Indemnification Amount is owed to Buyer, then, within three (3) Business Days following the receipt of such Indemnification Response Notice by Buyer, Buyer and Owner agree that they shall jointly execute and deliver to the Escrow Agent prior to the expiration of the Indemnification Response Period an Indemnified Person Payment Release Notice in the form attached hereto as Exhibit A-3 (an "**Indemnified Person Payment Release Notice**") instructing the Escrow Agent to release such amount agreed to by Owner (or such lesser amount as may remain in the Fund representing the Indemnification Escrow Amount) to Buyer from the Fund representing the Indemnification Escrow Amount.

(v) If Owner and Buyer are unable to resolve any dispute relating to any Contested Indemnification Amount during the 30-day period commencing upon the receipt of the Indemnification Response Notice by Buyer, then such dispute will be resolved in accordance with Section 11.3 and Section 11.4 of the Purchase Agreement or otherwise by written agreement between Buyer and Owner. Following any such resolution, Buyer and Owner shall jointly execute and deliver to the Escrow Agent, within three (3) Business Days after such resolution, a Claim Resolution Notice in the form attached hereto as Exhibit A-4 (a "**Claim Resolution Notice**") instructing the Escrow Agent to make payment, if any, from the Fund representing the Indemnification Escrow Amount (or such lesser amount as may remain in the Fund representing the Indemnification Escrow Amount) consistent with such resolution.

(vi) If the aggregate amount remaining in the Fund representing the Indemnification Escrow Amount, including any interest accrued or income otherwise earned thereon and not previously distributed (as of any particular time, the "**Aggregate Indemnification Escrow Balance**"), as of the date that is fifteen (15) months from the date of this Agreement (the "**Indemnification Expiration Date**"), exceeds the aggregate dollar amount of the Contested Indemnification Amounts associated with all Claims that have not been finally resolved and (if applicable) paid (each, an "**Unresolved**

4

**Indemnification Escrow Claim**" and the aggregate dollar amount of all such Contested Indemnification Amounts being referred to as the "**Aggregate Pending Indemnification Claim Amount**") prior to the Indemnification Expiration Date, then the Escrow Agent shall release to Owner within two (2) Business Days after the Indemnification Expiration Period, or as soon as practicable thereafter, the Aggregate Indemnification Distribution Amount from the Fund representing the Indemnification Escrow Amount. For the avoidance of any doubt, the "**Aggregate Indemnification Distribution Amount**" shall be the difference of the Aggregate Indemnification Escrow Balance as of the Indemnification Expiration Date minus the Aggregate Pending Indemnification Claim Amount as of 5:00 P.M. New York Time on the Indemnification Expiration Date.

(vii) Following the Indemnification Expiration Date, if an Unresolved Indemnification Escrow Claim is finally resolved, Buyer and Owner shall jointly execute and deliver to the Escrow Agent, within three (3) Business Days after the final resolution of such Unresolved Indemnification Escrow Claim, a Claim Resolution Notice instructing the Escrow Agent to make payments, if any, from the Fund representing the Indemnification Escrow Amount consistent with such resolution; provided that in connection with any such resolution, no payment from the Fund representing the Indemnification Escrow Amount shall be made to Owner for payment if such payment would reduce the Aggregate Indemnification Escrow Balance at the time of any such payment below the Aggregate Pending Indemnification Claim Amount as of such time.

(viii) The Escrow Agent shall pay all amounts payable under this Section 3(b) to, as applicable, (A) Buyer by wire transfer of immediately available funds to an account designated by Buyer or as set forth in the Indemnified Person Payment Release Notice or Claim Resolution Notice, as applicable, or (B) Seller by transfer of immediately available funds to an account designated by Owner or as set forth in a Claim Resolution Notice.

(c) <u>Disbursements of the Special Indemnity Escrow Amount</u>.

(i) Losses for which a Buyer Indemnified Party is entitled to indemnification under Section 8.2(h) of the Purchase Agreement shall be paid from the Fund representing the Special Indemnity Escrow Amount as provided in this Section 3(c). If a Buyer Indemnified Party wishes to make a claim against the Fund representing the Special Indemnity Escrow Amount pursuant to Section 8.2(h) of the Purchase Agreement (a "**Special Indemnity Claim**"), Buyer shall, on its own behalf or on behalf of another Buyer Indemnified Party, deliver written notice of such Special Indemnity Claim in the form of <u>Exhibit A-2</u> (a "**Special Indemnity Claim Notice**") to Escrow Agent in accordance with Section 3(e) below (and a copy contemporaneously delivered to Owner in accordance with Section 8 hereunder), setting forth: (A) a reasonably detailed description of the facts and circumstances entitling the Buyer Indemnified Party to such indemnification; and (B) if known or reasonably estimable, the aggregate dollar amount of the Losses that have been, or are reasonably expected to be incurred and for which the Buyer Indemnified Party is seeking indemnification hereunder (the aggregate amount of such estimate being referred to as the "**Claimed Special Indemnity Amount**"). For the avoidance of doubt, Buyer shall be entitled to amend any Special Indemnity Claim Notice, including, if applicable, the Claimed Special Indemnity Amount set forth therein (by indicating, if known or reasonably estimable, the aggregate dollar amount of the Losses that have been, or are reasonably expected to be incurred), at any time during which any funds remain in the Fund representing the Special Indemnity Escrow Amount. Notwithstanding anything herein to the contrary, Buyer shall be deemed to have made, as of the date hereof, a claim of undetermined amount with respect to the litigation matters set described on Schedule 8.2(h) of the Purchase Agreement.

(ii) The Escrow Agent shall only release all or any portion of a Claimed Special Indemnity Amount from the portion of the Fund representing the Special Indemnity Escrow Amount with respect to any Special Indemnity Claim: (A) upon the termination of the Special Indemnity Response Period if Owner fails to deliver a Special Indemnity Response Notice by 5:00 P.M. New York time on the 30th day of the Special Indemnity Response Period; (B) upon the Escrow Agent's receipt of an Indemnified Person Payment Release Notice in accordance with Section 3(c)(iv); or (C) upon the Escrow Agent's receipt of a Special Indemnity Claim Resolution Notice in accordance with Section 3(c)(v).

(iii) During the 30-day period commencing on the day after the date of receipt by the Escrow Agent of a Special Indemnity Claim Notice (or such additional 30 days commencing on the day of receipt by Escrow Agent of any amendment to a previously submitted Special Indemnity Claim Notice) (the "**Special Indemnity Response Period**"), Owner shall, no later than 5:00 P.M. New York time on the 30th day of the Special Indemnity Response Period, deliver to Buyer and the Escrow Agent a written response (the "**Special Indemnity Response Notice**") in which Owner: (i) agrees that the full Claimed Special Indemnity Amount is owed to Buyer; (ii) agrees that part (but not all) of the Claimed Special Indemnity Amount is owed to Buyer; or (iii) asserts that no part of the Claimed Special Indemnity Amount is owed to Buyer. Any Special Indemnity Response Notice contemplated by clause (ii) or (iii) shall include a reasonably detailed description of Owner's reasons for such objection and indicate the amount in dispute if less than the entire Claimed Special Indemnity Amount. Any part of the Claimed Special Indemnity Amount that is not agreed by Owner to be owed to Buyer shall be referred to as the "**Contested Special Indemnity Amount**." If Owner fails to deliver a timely Special Indemnity Response Notice within the applicable Special Indemnity Response Period (or as may be extended by the receipt of an amendment to the original Indemnification Claim Notice), the Escrow Agent shall release to Buyer within two (2) Business Days after the Special Indemnity Response Period, or as soon as practicable thereafter the entire Claimed Special Indemnity Amount from the Fund representing the Special Indemnity Escrow Amount (or such lesser amount as may remain in the Fund representing the Special Indemnity Escrow Amount).

(iv) If prior to the expiration of the Special Indemnity Response Period Owner delivers a Special Indemnity Response Notice to Buyer agreeing that all or any part of the Claimed Special Indemnity Amount is owed to Buyer, then, within three (3) Business Days following the receipt of such Special Indemnity Response Notice by Buyer, Buyer and Owner agree that they shall jointly execute and deliver to the Escrow Agent prior to the expiration of the Special Indemnity Response Period an Indemnified Person Payment Release Notice instructing the Escrow Agent to release such amount agreed to by Owner (or such lesser amount as may remain in the Fund representing the Special Indemnity Escrow Amount) to Buyer from the Fund representing the Special Indemnity Escrow Amount.

(v) If Owner and Buyer are unable to resolve any dispute relating to any Contested Special Indemnity Amount during the 30-day period commencing upon the receipt of the Special Indemnity Response Notice by Buyer, then such dispute will be resolved in accordance with Section 11.3 and Section 11.4 of the Purchase Agreement or otherwise by written agreement between Buyer and Owner. Following any such resolution, Buyer and Owner shall jointly execute and deliver to the Escrow Agent, within three (3) Business Days after such resolution, a Claim Resolution Notice instructing the Escrow Agent to make payment to Buyer, if any, from the Fund representing the Special Indemnity Escrow Amount (or such lesser amount as may remain in the Fund representing the Special Indemnity Escrow Amount) consistent with such resolution.

6707390.3B
1064253.03A-CHISR02A - MSW
6707390.5A
6707390.11A

(vi) If at any time prior to the date that is five (5) years from the date of this Agreement (the "**Special Indemnity Expiration Date**"), the existing matters referenced on Section 8.2(h) of the Seller Disclosure Schedule (as such term is defined in the Purchase Agreement) shall have been finally resolved and no other litigation matters arising out of the same or similar circumstances are then pending, then Owner and Buyer shall submit to the Escrow Agent a joint written instruction letter, in substantially the form of Exhibit A-1, whereupon the Escrow Agent shall release to Seller within two (2) Business Days after the Special Indemnity Response Period, or as soon as practicable thereafter the remaining amount of the Fund representing the Special Indemnity Escrow Amount. For the avoidance of doubt, such litigation matters shall be deemed "finally resolved" with respect to the preceding sentence upon (i) the entry of a final, non-appealable order of court, or (ii) the entry of the parties thereto into a settlement and release agreement that releases the Company from any employment related claims.

(vii) If, as of the Special Indemnity Expiration Date:

(a) there are any pending Claims made under Section 3(c)(i) (each, an "**Unresolved Special Indemnity Escrow Claim**"), then the Escrow Agent shall continue to hold the entire amount of the Fund representing the Special Indemnity Escrow Amount.

(b) there are no pending Unresolved Special Indemnity Escrow Claims, then the Escrow Agent shall release to Seller the remaining amount of the Fund representing the Special Indemnity Escrow Amount.

(viii) Following the Special Indemnity Expiration Date, if an Unresolved Special Indemnity Escrow Claim is finally resolved, Buyer and Owner shall jointly execute and deliver to the Escrow Agent, within three (3) Business Days after the final resolution of such Unresolved Special Indemnity Escrow Claim, a Claim Resolution Notice instructing the Escrow Agent to make payments to Buyer and Seller, if any, from the Fund representing the Special Indemnity Escrow Amount consistent with such resolution; provided that in connection with any such resolution, no payment from the Fund representing the Special Indemnity Escrow Amount shall be made to Seller unless all Unresolved Special Indemnity Escrow Claims have then been resolved.

(viii) The Escrow Agent shall pay all amounts payable under this Section 3(c) to, as applicable, (A) Buyer by wire transfer of immediately available funds to an account designated by Buyer or as set forth in the Indemnified Person Payment Release Notice or Claim Resolution Notice, as applicable, or (B) Seller by transfer of immediately available funds to an account designated by Owner or as set forth in a Claim Resolution Notice.

(d) Disbursements of the Special Tax Escrow Amount.

(i) Upon a final determination by a Taxing Authority as a result of an audit or other examination of the Company by such Taxing Authority concluding that Unpaid Sales Taxes are due and owing, Owner and Buyer shall submit to the Escrow Agent a joint written instruction letter, in substantially the form of Exhibit A-1, specifying the amount, if any, to be paid by Owner to Buyer pursuant to Section 7.10(j) of the Purchase Agreement (the "**Unpaid Sales Tax Amount**"). Escrow Agent shall, within two (2) Business Days following receipt of such joint written instruction letter, deliver to the applicable Taxing Authority (or to the Company's representative in the defense of any audit or other examination of the Company with respect to Unpaid Sales Taxes or to Seller, each of whom shall

7

promptly pay such Unpaid Sales Tax Amount to the relevant Taxing Authority) such Unpaid Sales Tax Amount out of the amount of the Fund representing the Special Tax Escrow Amount.

(ii) On the earlier of (1) the date that is five (5) years from the date of this Agreement or (2) the enactment of a Law that eliminates the Company's liability for any Unpaid Sales Taxes for all Pre-Closing Tax Periods (the "**Special Tax Escrow Expiration Date**"), Buyer and Owner shall jointly execute and deliver to the Escrow Agent a joint written instruction letter instructing the Escrow Agent to release an amount equal to (x) any remaining portion of the Fund representing the Special Tax Escrow Amount, together with all interest, if any, earned on any such amount and not previously distributed, minus (y) the estimated amount to resolve any outstanding audit or other examination with respect to Unpaid Sales Taxes as of that date, as reasonably estimated by Buyer and Owner or, if Buyer and Owner are unable agree as to such estimate, determined in the reasonable opinion of a law firm that is mutually agreeable to Owner and Buyer ("**Special Tax Escrow Release Amount**"), and the Escrow Agent shall, within two (2) Business Days, or as soon as practicable thereafter, following receipt of the joint written instruction letter, deliver to Seller via wire transfer of immediately available funds to the account designated by Owner, such Special Tax Escrow Release Amount.

(iii) If on the Special Tax Escrow Expiration Date, there remains a portion of the Fund representing the Special Tax Escrow Amount because there is a pending claim, audit or other proceeding with a Tax Authority relating to Unpaid Sales Taxes, Buyer and Owner shall, upon the resolution of such pending claim, audit or other proceeding, jointly execute and deliver to the Escrow Agent a joint written instruction letter instructing the Escrow Agent to release any remaining Special Tax Escrow Amount, together with all interest, if any, earned on any such amount and, as between the Parties, not previously distributed or paid over to such Taxing Authority ("**Excess Special Tax Escrow Amount**"), and the Escrow Agent shall, within two (2) Business Days, or as soon as practicable thereafter, following receipt of the joint written instruction letter, deliver to Seller via wire transfer of immediately available funds to the account designated by Owner, such Excess Special Tax Escrow Amount.

(e) Instructions.

(i) Notwithstanding anything to the contrary set forth in Section 8, any instructions setting forth, claiming, containing, objecting to, or in any way related to the transfer or distribution of the Fund, must be in writing executed by the appropriate Party or Parties as evidenced by the signatures of the person or persons signing this Agreement or one of their designated persons as set forth on the Designation of Authorized Representatives attached hereto as Schedules 1-A and 1-B (each an "**Authorized Representative**"), and delivered to Escrow Agent only by confirmed facsimile or as a Portable Document Format ("**PDF**") attached to an email on a Business Day only at the fax number or email address set forth in Section 8 below. Each Designation of Authorized Representatives shall be signed by the Secretary, any Assistant Secretary or other duly authorized officer of the named Party. No instruction for or related to the transfer or distribution of the Fund shall be deemed delivered and effective unless Escrow Agent actually shall have received it on a Business Day by facsimile or as a PDF attached to an email only at the fax number or email address set forth in Section 8 and as evidenced by a confirmed transmittal to the Party's or Parties' transmitting fax number or email address and Escrow Agent has been able to satisfy any applicable security procedures as may be required hereunder. Escrow Agent shall not be liable to any Party or other person for refraining from acting upon any instruction for or related to the transfer or distribution of the Fund if delivered to any other fax number or email address, including but not limited to a valid email address of any employee of Escrow Agent. The Parties each acknowledge that

6707390.3B
1064253.03A-CHISR02A - MSW
6707390.5A
6707390.11A

Escrow Agent is authorized to use the following funds transfer instructions to disburse any funds due to Buyer or Owner, respectively, without a verifying call-back as set forth in Section 3(e)(ii) below:

| Buyer: | Owner: |
|---|---|
| Bank name:  JPMorgan Chase | Bank name: [To be added] |
| Bank Address: 1 Chase Manhattan Plaza | Bank Address: |
| New York, New York 10005 | |
| ABA Number: 021000021 | ABA Number: |
| Credit A/C Name: Bed Bath & Beyond Inc. | Credit A/C Name: |
| Credit A/C #: 144058770 | Credit A/C #: |
| Credit A/C Address: 650 Liberty Avenue | Credit A/C Address: |
| Union, NJ 07083 | |
| If Applicable: | If Applicable: |
| FFC A/C Name: NA | FFC A/C Name: |
| FFC A/C #: NA | FFC A/C #: |
| FFC A/C Address: NA | FFC A/C Address: |

Additionally, the Parties agree that any other repetitive funds transfer instructions may be given to Escrow Agent for one or more beneficiaries where only the date, amount of funds to be transferred, and/or the description of the requested payment may change ("**Standing Instructions**").  Any such Standing Instructions shall be set up in writing in advance of any actual transfer request and shall contain complete funds transfer information (as set forth above) for the beneficiary.  Any such set-up of Standing Instructions, and any changes in existing set-up, shall be confirmed by means of a verifying callback to an Authorized Representative.  Standing Instructions will continue to be followed until cancelled by the applicable Party in a writing signed by an Authorized Representative and delivered to Escrow Agent in accordance with this Section 3(e)(i).  Once set up as provided herein, Escrow Agent may rely solely upon such Standing Instructions and all identifying information set forth therein for each beneficiary. Each Party agrees that any Standing Instructions shall be effective as the funds transfer instructions of such Party or the Parties, as applicable, without requiring a verifying callback, as set forth in Section 3(e)(ii) below.

(ii) In the event any other funds transfer instructions other than those described in Section 3(e)(i) above are set forth in a permitted instruction from a Party or the Parties, Escrow Agent is authorized to confirm such instructions by a telephone call-back to one of the Authorized Representatives, and Escrow Agent may rely upon the confirmation of anyone purporting to be that Authorized Representative. The persons designated as Authorized Representatives and telephone numbers for same may be changed only in a writing executed by an Authorized Representative or other duly authorized officer of the applicable Party setting forth such changes and actually received by Escrow Agent via facsimile or as a PDF attached to an email.  Except as set forth in Section 3(e)(i) above, no funds will be disbursed until an Authorized Representative is able to confirm such instructions by telephone callback.

(iii) Escrow Agent, any intermediary bank and the beneficiary's bank in any funds transfer may rely upon the identifying number of the beneficiary's bank or any intermediary bank included in a funds transfer instruction provided by a Party or the Parties and confirmed by an Authorized Representative.  Further the beneficiary's bank in the funds transfer instruction may make payment on the basis of the account number provided in such Party's or the Parties' instruction and confirmed by an Authorized Representative even though it identifies a person different from the named beneficiary.

9

(iv) As used in this Section 3, "**Business Day**" shall mean any day other than a Saturday, Sunday or any other day on which Escrow Agent located at the notice address set forth below is authorized or required by law or executive order to remain closed. The Parties acknowledge that the security procedures set forth in this Section 3 are commercially reasonable.

(f) Termination. Upon delivery of the Fund in full by Escrow Agent pursuant to this Section 3, this Agreement shall terminate and the related account(s) shall be closed, subject to the provisions of Section 6.

4.      **Escrow Agent**.  Escrow Agent shall have only those duties as are specifically and expressly provided herein, and no other duties, including but not limited to any fiduciary duty, shall be implied. Escrow Agent has no knowledge of,  nor any obligation to comply with, the terms and conditions of any other agreement between the Parties**,** nor shall Escrow Agent be required to determine if any Party has complied with any other agreement.  Notwithstanding the terms of any other agreement between the Parties, the terms and conditions of this Agreement shall control the actions of Escrow Agent.  Escrow Agent may conclusively rely upon any written notice, document, instruction or request delivered by the Parties believed by it to be genuine and to have been signed by an Authorized Representative(s), as applicable, without inquiry and without requiring substantiating evidence of any kind and Escrow Agent shall be under no duty to inquire into or investigate the validity, accuracy or content of any such document, notice, instruction or request. Escrow Agent shall not be liable for any action taken, suffered or omitted to be taken by it in good faith except to the extent that Escrow Agent's gross negligence, willful misconduct, or bad faith was the cause of any direct loss to either Party.  Escrow Agent may execute any of its powers and perform any of its duties hereunder directly or through affiliates or agents.   In the event Escrow Agent shall be uncertain, or believes there is some ambiguity, as to its duties or rights hereunder, or receives instructions, claims or demands from any Party hereto which in Escrow Agent's judgment conflict with the provisions of this Agreement, or if Escrow Agent receives conflicting instructions from the Parties, Escrow Agent shall be entitled either to: (a) refrain from taking any action until it shall be given (i) a joint written direction executed by Authorized Representatives of the Parties which eliminates such conflict or (ii) a court order issued by a court of competent jurisdiction (it being understood that Escrow Agent shall be entitled conclusively to rely and act upon any such court order and shall have no obligation to determine whether any such court order is final); or (b) file an action in interpleader. Escrow Agent shall have no duty to solicit any payments which may be due it or the Fund, including, without limitation, the Escrow Deposit nor shall the Escrow Agent have any duty or obligation to confirm or verify the accuracy or correctness of any amounts deposited with it hereunder. The Parties grant to the Escrow Agent a lien and security interest in the Fund in order to secure any indemnification obligations of the Parties or obligation for fees or expenses owed to the Escrow Agent hereunder. Anything in this Agreement to the contrary notwithstanding, in no event shall Escrow Agent be liable for special, incidental, punitive, indirect or consequential loss or damage of any kind whatsoever (including but not limited to lost profits), even if Escrow Agent has been advised of the likelihood of such loss or damage and regardless of the form of action; provided, however, that the foregoing shall not apply to the extent such losses or damage is caused by gross negligence, willful misconduct, or bad faith on the part of Escrow Agent.

5.      **Succession.**  Escrow Agent may resign and be discharged from its duties or obligations hereunder by giving not less than thirty (30) days advance notice in writing of such resignation to the Parties, or may be removed, with or without cause, by the Parties at any time after giving not less than thirty (30) days prior joint written notice to the Escrow Agent.  Escrow Agent's sole responsibility after such applicable thirty (30) day notice period expires shall be to hold the Fund (without any obligation to reinvest the

10

same) and to deliver the same to a designated substitute escrow agent, if any, appointed by the Parties, or such other person designated by the Parties, or in accordance with the directions of a final court order, at which time of delivery, Escrow Agent's obligations hereunder shall cease and terminate.  If prior to the effective resignation or removal date, the Parties have failed to appoint a successor escrow agent, or to instruct the Escrow Agent to deliver the Fund to another person as provided above, or if such delivery is contrary to applicable law, at any time on or after the effective resignation date, Escrow Agent may either (a) interplead the Fund with a court located in the State of Illinois and the costs, expenses and reasonable attorney's fees which are incurred in connection with such proceeding may be charged against and withdrawn from the Fund; or (b) appoint a successor escrow agent of its own choice.  Any appointment of a successor escrow agent shall be binding upon the Parties and no appointed successor escrow agent shall be deemed to be an agent of Escrow Agent.  Escrow Agent shall deliver the Fund to any appointed successor escrow agent, at which time Escrow Agent's obligations under this Agreement shall cease and terminate. Any entity into which Escrow Agent may be merged or converted or with which it may be consolidated, or any entity to which all or substantially all of the escrow business may be transferred, shall be the Escrow Agent under this Agreement without further act.

6.      **Compensation; Acknowledgment.**

(a)      The Parties agree jointly and severally to pay Escrow Agent upon execution of this Agreement and from time to time thereafter reasonable compensation for the services to be rendered hereunder, which unless otherwise agreed in writing, shall be as described in <u>Schedule 2</u>; provided, however, that as between Buyer and Owner, Buyer and Owner agree to split equally any such payments.

(b)      Each of the Parties further agrees to the disclosures and agreements set forth in <u>Schedule 2</u>.

7.      **Indemnification and Reimbursement.**  The Parties agree jointly and severally to indemnify, defend, hold harmless, pay or reimburse Escrow Agent and its affiliates and their respective successors, assigns, directors, agents and employees (the "**Indemnitees**") from and against any and all losses, damages, claims, liabilities, costs or expenses (including, attorney's fees) (collectively "**Losses**"), resulting directly or indirectly from (a) Escrow Agent's  performance of this Agreement, except to the extent that such Losses are determined by a court of competent jurisdiction to have been caused by the gross negligence, willful misconduct or bad faith of such Indemnitee; and (b) Escrow Agent's following, accepting or acting upon any instructions or directions, whether joint or singular, from the Parties received in accordance with this Agreement.  The Parties hereby grant Escrow Agent a right of set-off against the Fund for the payment of any claim for indemnification, fees, expenses and amounts due to Escrow Agent or an Indemnitee.  The obligations set forth in this Section 7 shall survive the resignation, replacement or removal of Escrow Agent or the termination of this Agreement.

8.      **Notices.**  Except as otherwise expressly permitted in Section 3, all communications hereunder shall be in writing or set forth in a PDF attached to an email, and shall be delivered by facsimile, email or overnight courier only to the appropriate fax number,  email address, or notice address set forth for each party as follows:

If to Buyer:

Bed Bath & Beyond Inc.
650 Liberty Avenue

11

Union, New Jersey 07083
Attention:  Jason Bernstein
Email:  Jason.Bernstein@bedbath.com

with a copy (which shall not constitute notice) to:

Bryan Cave LLP
One Metropolitan Square, Suite 3600
211 North Broadway
St. Louis, Missouri 63102
Attention:  William F. Seabaugh, Esq.
Email: wfseabaugh@bryancave.com

and

Bed Bath & Beyond Inc.
650 Liberty Avenue
Union, New Jersey 07083
Attention:  Allan Rauch, Esq.
Email:  Allan.Rauch@bedbath.com

If to Owner:

Sosin Arnold & Schoenbeck, Ltd.
9501 W. 144th Place, Suite 205
Orland Park, IL 60462
Attention: George Arnold and Daniel Randolph
E-mail: GArnold@sosinarnold.com
            Danr@EliteJets.com

with a copy (which shall not constitute notice) to:

Skadden, Arps, Slate, Meagher & Flom LLP
155 North Wacker Drive
Chicago, Illinois  60606
Attention:  Brian W. Duwe
E-mail: brian.duwe@skadden.com

If to Escrow Agent:

JPMorgan Chase Bank, N.A.
Escrow Services
4 New York Plaza, 11th Floor
New York, N.Y. 10004
Attention:  Christopher Vetri / Audrey Mohan
Fax No.:    212-552-2812
Email Address: ec.escrow@jpmorgan.com

12

9. **Compliance with Court Orders.**  In the event that a legal garnishment, attachment, levy restraining notice or court order is served with respect to any of the Fund, or the delivery thereof shall be stayed or enjoined by an order of a court, Escrow Agent is hereby expressly authorized, in its sole discretion, to obey and comply with all such orders so entered or issued, and in the event that Escrow Agent obeys or complies with any such order it shall not be liable to any of the Parties hereto or to any other person by reason of such compliance notwithstanding such order be subsequently reversed, modified, annulled, set aside or vacated.

10. **Miscellaneous.**

(a)     The provisions of this Agreement may be waived, altered, amended or supplemented only by a writing signed by the Escrow Agent and the Parties.  Neither this Agreement nor any right or interest hereunder may be assigned by any Party without the prior written consent of Escrow Agent and the other Party.  This Agreement shall be governed by and construed under the laws of the State of  Delaware. Each Party and Escrow Agent irrevocably waives any objection on the grounds of venue, forum non-conveniens or any similar grounds and irrevocably consents to service of process by mail or in any other manner permitted by applicable law and consents to the jurisdiction of the courts located in the State of Illinois. To the extent that in any jurisdiction either Party may now or hereafter be entitled to claim for itself or its assets, immunity from suit, execution, attachment (before or after judgment) or other legal process, such Party shall not claim, and hereby irrevocably waives, such immunity.  Escrow Agent and the Parties further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Agreement.

(b)     No party to this Agreement is liable to any other party for losses due to, or if it is unable to perform its obligations under the terms of this Agreement because of, acts of God, fire, war, terrorism, floods, strikes, electrical outages, equipment or transmission failure, or other causes reasonably beyond its control.  This Agreement and any joint instructions from the Parties may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument or instruction, as applicable. All signatures of the parties to this Agreement may be transmitted by facsimile or as a PDF attached to an email, and such facsimile or PDF will, for all purposes, be deemed to be the original signature of such party whose signature it reproduces, and will be binding upon such party.  If any provision of this Agreement is determined to be prohibited or unenforceable by reason of any applicable law of a jurisdiction, then such provision shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions thereof, and any such prohibition or unenforceability in such jurisdiction shall not invalidate or render unenforceable such provisions in any other jurisdiction.  The Parties each represent, warrant and covenant that (i) each document, notice, instruction or request provided by such Party to Escrow Agent shall comply with applicable laws and regulations;  (ii) such Party has full power and authority to enter into, execute and deliver this Agreement and to perform all of the duties and obligations to be performed by it hereunder; and (iii) the person(s) executing this Agreement on such Party's behalf and certifying Authorized Representatives in the applicable Schedule 1 have been duly and properly authorized to do so, and  each Authorized Representative of such Party has been duly and properly authorized to take the actions specified for such person in the applicable Schedule 1.  Except as expressly provided in Section 7 above, nothing in this Agreement, whether express or implied, shall be construed to give to any person or entity other than Escrow Agent and the Parties any legal or equitable right, remedy, interest or claim under or in respect of the Fund or this Agreement.

13

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement as of the date set forth above.

**BED BATH & BEYOND INC.**
As Buyer

By: _____
Name: Steven H. Temares
Title: Chief Executive Officer

**DANIEL R. RANDOLPH**
As Owner

By: _____
Name: Daniel R. Randolph

**JPMORGAN CHASE BANK, N.A.,**
As Escrow Agent

By: _____
Name:
Title:

*[Signature Page to Escrow Agreement]*

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement as of the date set forth above.

**BED BATH & BEYOND INC.**
As Buyer

By: _____
Name:
Title:

**DANIEL R. RANDOLPH**
As Owner

By: _____
Name:  Daniel R. Randolph

**JPMORGAN CHASE BANK, N.A.,**
As Escrow Agent

By: _____
Name:
Title:

*[Signature Page to Escrow Agreement]*

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement as of the date set forth above.

**BED BATH & BEYOND INC.**
As Buyer

By: _____
Name:
Title:

**DANIEL R. RANDOLPH**
As Owner

By: _____
Name:   Daniel R. Randolph

**JPMORGAN CHASE BANK, N.A.,**
As Escrow Agent

By: _____
Name:
Title:            SAVERIO A. LUNETTA
                     · VICE PRESIDENT

*[Signature Page to Escrow Agreement]*

**EXHIBIT A-1**

**FORM OF ESCROW RELEASE NOTICE – JOINT INSTRUCTIONS**

JPMorgan Chase Bank, N.A., Escrow Services
[Address]
[Fax No.]
[Email Address]

Date:

**Re:  [Name of Parties] – Escrow Agreement dated [___], 2016**
**Escrow Account no. [    ]**

**Dear Sir/Madam:**

We refer to the Escrow Agreement dated [___], 2016 by and among Daniel Randolph, an individual ("Owner"), Bed Bath & Beyond Inc., a New York corporation ("Buyer") and JPMorgan Chase Bank, N.A., as Escrow Agent (the "Escrow Agreement").

Capitalized terms in this letter that are not otherwise defined shall have the same meaning given to them in the Escrow Agreement.

The Parties instruct the Escrow Agent to release the Fund, or the portion specified below, to the specified party as instructed below.

Amount
(In writing)
Beneficiary
City
Country

**US Instructions:**

Bank
Bank address
ABA Number:
Credit A/C Name:
Credit A/C #:
Credit A/C Address:
If Applicable:
      FFC A/C Name:
      FFC A/C #:
      FFC A/C Address:

15

**International Instructions:**

Bank Name:
Bank Address
SWIFT Code:
US Pay Through ABA:
Credit A/C Name:
Credit A/C # (IBAN #):
Credit A/C Address:
If Applicable:
        FFC A/C Name:
        FFC A/C # (IBAN #):
        FFC A/C Address:


**FOR AND ON BEHALF OF BUYER:**


_____

Name:
Date:
Title:



**FOR AND ON BEHALF OF OWNER:**


_____

Name:
Date:
Title:

16

**EXHIBIT A-2**

**FORM OF [INDEMNIFICATION/SPECIAL INDEMNITY] CLAIM NOTICE**

**[Date]**

JPMorgan Chase Bank, N.A.
Escrow Services
[Address]
[Fax Number]

[Name and Address of Other Party]

Dear Sir/Madam:

This notice is being delivered pursuant to Section [3(b)(i) / 3(c)(i)] of the Escrow Agreement dated [__], 2016 by and among Daniel Randolph, an individual ("Owner"), Bed Bath & Beyond Inc., a New York corporation ("Buyer") and JPMorgan Chase Bank, N.A., as Escrow Agent (the "Escrow Agreement"). Capitalized terms in this letter that are not otherwise defined shall have their meanings set forth in the Escrow Agreement.

Buyer hereby gives notice pursuant to Section [3(b)(i) / 3(c)(i)] of the Escrow Agreement of a claim for indemnification made under the Purchase Agreement. The amount of the claim is $_____.

The summary for the basis of such claim is as follows:

        [Insert details]

Buyer hereby certifies to the Escrow Agent that this notice was delivered to Owner.

[BUYER]

By: _____

Title: _____

Date: _____

17

**EXHIBIT A-3**

**FORM OF INDEMNIFIED PERSON PAYMENT RELEASE NOTICE**

[Date]

JPMorgan Chase Bank, N.A.
Escrow Services
[Address]
[Fax Number]

[Name and Address of Other Party]

Dear Sir/Madam:

This notice is being delivered pursuant to Section [3(b)(iv) / 3(c)(iv)] of the Escrow Agreement dated [__], 2016 by and among Daniel Randolph, an individual ("Owner"), Bed Bath & Beyond Inc., a New York corporation ("Buyer") and JPMorgan Chase Bank, N.A., as Escrow Agent (the "Escrow Agreement"). All capitalized terms used but not defined in this Indemnified Person Payment Release Notice shall have the meanings given to such terms in the Escrow Agreement.

Reference is hereby made to that certain [Indemnification / Special Indemnity] Claim Notice, dated as of [●], which specified a Claimed [Indemnification / Special Indemnity] Amount of _____ dollars in connection with the [Indemnification / Special Indemnity] Claim described therein.

Pursuant to Section [3(b)(ii) / 3(c)(ii)] of the Escrow Agreement, Owner and Buyer hereby instruct the Escrow Agent to distribute _____ dollars from the Fund representing the [Indemnification / Special Indemnity] Escrow Amount to [Name of Buyer Indemnified Party] in accordance with Section [3(b)(viii) / 3(c)(viii)] of the Escrow Agreement at the account specified on Annex A attached hereto.

[Upon payment of such amount as set forth above, _____ dollars remains a Contested [Indemnification / Special Indemnity] Amount in the connection with such [Indemnification / Special Indemnity] Claim.][Include if applicable.]

**FOR AND ON BEHALF OF BUYER:**

_____
Name:
Date:
Title:

**FOR AND ON BEHALF OF OWNER:**

_____
Name:
Date:

*[Signature Page to Escrow Agreement]*

Title:

6707390.3B
1064253.03A-CHISR02A - MSW
6707390.5A
6707390.11A

**EXHIBIT A-4**

**FORM OF CLAIM RESOLUTION NOTICE**

**[Date]**

JPMorgan Chase Bank, N.A.
Escrow Services
[Address]
[Fax Number]

[Name and Address of Other Party]

Dear Sir/Madam:

This notice is being delivered pursuant to Section [3(b)(v) / 3(c)(v)] of the Escrow Agreement dated [__], 2016 by and among Daniel Randolph, an individual ("Owner"), Bed Bath & Beyond Inc., a New York corporation ("Buyer") and JPMorgan Chase Bank, N.A., as Escrow Agent (the "Escrow Agreement"). All capitalized terms used but not defined in this Claim Resolution Notice shall have the meanings given to such terms in the Escrow Agreement.

Reference is hereby made to the that certain [Indemnification / Special Indemnity] Claim Notice, dated as of [●], which specified a Claimed [Indemnification / Special Indemnity] Amount of _____ dollars in connection with the [Indemnification / Special Indemnity] Claim described therein, of which was _____ dollars is a Contested [Indemnification / Special Indemnity] Amount as of the date hereof.

A final resolution of the Contested [Indemnification / Special Indemnity] Amount has been reached in accordance with the Purchase Agreement.

[Upon payment of such amount as set forth below, there is no longer a Contested [Indemnification / Special Indemnity] Amount with respect to such [Indemnification / Special Indemnity] Claim.] / [ There is no longer a Contested [Indemnification / Special Indemnity] Amount with respect to such [Indemnification / Special Indemnity] Claim.]

[Pursuant to Section [3(b)(ii) / 3(c)(ii)] of the Escrow Agreement, Owner and Buyer hereby instruct the Escrow Agent to distribute [●] dollars from the Fund representing the [Indemnification / Special Indemnity] Escrow Amount to [Name of Buyer Indemnified Party] in accordance with Section [3(b)(viii) / 3(c)(viii)] of the Escrow Agreement at the account specified on Annex A attached hereto]/[solely if the [Indemnification / Special Indemnity] Claim Resolution Notice delivered after the [Indemnification Expiration Date / Special Indemnity Expiration Date], [●] dollars from the Fund representing the [Indemnification / Special Indemnity] Escrow Amount to Owner in accordance with Section [3(b)(vi) / 3(b)(vii)] of the Escrow Agreement at the account specified on Annex A] [Include if and as applicable]

**FOR AND ON BEHALF OF BUYER:**

_____
Name:

*[Signature Page to Escrow Agreement]*

6707390.3B
1064253.03A-CHISR02A - MSW
6707390.5A
6707390.11A

Date:
Title:


**FOR AND ON BEHALF OF OWNER:**


_____
Name:
Date:
Title:

**Schedule 1-A**

**BUYER**

**DESIGNATION OF AUTHORIZED
REPRESENTATIVES**

The undersigned, *Steven H. Temares*, being the duly elected, qualified and acting *Chief Executive officer* of Bed Bath & Beyond Inc. ("Buyer"), does hereby certify:

1.      That each of the following persons is at the date hereof an Authorized Representative, as such term is defined in the Escrow Agreement, dated _____, 20__, by and among Daniel Randolph, an individual ("Owner"), Buyer and JPMorgan Chase Bank, N.A., as Escrow Agent (the "Escrow Agreement"), that the signature appearing opposite each person's name is the true and genuine signature of such person, and that each person's contact information is current and up-to-date at the date hereof. Each of the Authorized Representatives is authorized to issue instructions, confirm funds transfer instructions by callback and effect changes in Authorized Representatives, all in accordance with the terms of the Escrow Agreement.

| NAME | SIGNATURE | TELEPHONE & CELL NUMBERS |
|---|---|---|
| Eugene Castagna | *[signature]* | (ce |
| Susan Lattmann | Susan E Lattmann | (ce |
| Allan Rauch | *[signature]* | (ce |

2.      That pursuant to Buyer's governing documents, as amended, the undersigned has the power and authority to execute this Designation on behalf of Buyer, and that the undersigned has so executed this Designation   this _____ day of _____, 20__.

Signature: _____

Name: *Steven H. Temares*

Title: *Chief Executive Officer*

**FOR YOUR SECURITY, PLEASE CROSS OUT ALL UNUSED SIGNATURE LINES ON THIS SCHEDULE 1-A**

21

All instructions, including but not limited to funds transfer instructions, whether transmitted by facsimile or set forth in a PDF attached to an email,  must include the signature of the Authorized Representative authorizing said funds transfer on behalf of such Party.

23

**Schedule 1-B**

**OWNER**

**DESIGNATION OF AUTHORIZED PERSON TO GIVE AND CONFIRM FUND TRANSFER INSTRUCTIONS**

NAME      SIGNATURE    TELEPHONE & CELL
                   NUMBERS

Daniel R. Randolph

(cell)

**FOR YOUR SECURITY, PLEASE CROSS OUT ALL UNUSED SIGNATURE LINES ON THIS SCHEDULE 1-B**

All instructions, including but not limited to funds transfer instructions, whether transmitted by facsimile or set forth in a PDF attached to an email, must include the signature of the Authorized Representative authorizing said funds transfer on behalf of such Party.

22

**SCHEDULE 2**

# J.P.Morgan

**Account Acceptance Fee** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . …...**WAIVED**
Encompassing review, negotiation and execution of governing documentation, opening of the account, and completion of all due diligence documentation.  Payable upon closing.

**Annual Administration Fee** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **$2,500**
The Administration Fee covers our usual and customary ministerial duties, including record keeping, distributions, document compliance and such other duties and responsibilities expressly set forth in the governing documents for each transaction.  Payable upon closing and annually in advance thereafter, without pro-ration for partial years.

**Extraordinary Services and Out-of Pocket Expenses**
The Escrow Agent or any of its affiliates may receive compensation with respect to any Alternative Investment directed hereunder including without limitation charging any applicable agency fee or trade execution fee in connection with each transaction.  Any additional services beyond our standard services as specified above, and all reasonable out-of-pocket expenses including attorney's or accountant's fees and expenses will be considered extraordinary services for which related costs, transaction charges, and additional fees will be billed at the Escrow Agent's then standard rate.  The Escrow Agent may impose, charge, pass-through and modify fees and/or charges for any account established and services provided by the Escrow Agent, including but not limited to, transaction, maintenance, balance-deficiency, and service fees, agency or trade execution fees, and other charges, including those levied by any governmental authority.  Payment of the invoice is due upon receipt.

**Investment**

The escrow deposit shall be continuously invested in a JPMorgan Chase Bank money market deposit account ("MMDA"). MMDAs have rates of interest or compensation that may vary from time to time as determined by the Escrow Agent.

**Disclosures and Agreements**

**Taxes.**  The Parties shall duly complete such tax documentation or other procedural formalities necessary for Escrow Agent to complete required tax reporting and for the relevant Party to receive interest or other income without withholding or deduction of tax in any jurisdiction. Should any information supplied in such tax documentation change, the Parties shall promptly notify Escrow Agent. Escrow Agent shall

25

withhold any taxes it deems appropriate in the absence of proper tax documentation or as required by law, and shall remit such taxes to the appropriate authorities.

**Representations Relating to Section 15B of the Securities Exchange Act of 1934 (Rule 15Ba1-1 et seq.) (the "Municipal Advisor Rule).** Each Party represents and warrants to the Escrow Agent that for purposes of the Municipal Advisor Rules, none of the funds (if any) currently invested, or that will be invested in the future, in money market funds, commercial paper or treasury bills under this Agreement constitute or contain (i) proceeds of municipal securities (including investment income therefrom and monies pledged or otherwise legally dedicated to serve as collateral or a source or repayment for such securities) or (ii) municipal escrow investments (as each such term is defined in the Municipal Advisor Rule). Each Party also represents and warrants to the Escrow Agent that the person providing this certification has access to the appropriate information or has direct knowledge of the source of the funds to be invested to enable the forgoing representation to be made. Further, each Party acknowledges that the Escrow Agent will rely on this representation until notified in writing otherwise.

**Patriot Act Disclosure.** Section 326 of the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001 ("USA PATRIOT Act") requires Escrow Agent to implement reasonable procedures to verify the identity of any person that opens a new account with it. Accordingly, you acknowledge that Section 326 of the USA PATRIOT Act and Escrow Agent's identity verification procedures require Escrow Agent to obtain information which may be used to confirm your identity including without limitation name, address and organizational documents ("identifying information"). You agree to provide Escrow Agent with and consent to Escrow Agent obtaining from third parties any such identifying information required as a condition of opening an account with or using any service provided by the Escrow Agent.

**OFAC Disclosure.** Escrow Agent is required to act in accordance with the laws and regulations of various jurisdictions relating to the prevention of money laundering and the implementation of sanctions, including but not limited to regulations issued by the U.S. Office of Foreign Assets Control. Escrow Agent is not obligated to execute payment orders or effect any other transaction where the beneficiary or other payee is a person or entity with whom the Escrow Agent is prohibited from doing business by any law or regulation applicable to Escrow Agent, or in any case where compliance would, in Escrow Agent's opinion, conflict with applicable law or banking practice or its own policies and procedures. Where Escrow Agent does not execute a payment order or effect a transaction for such reasons, Escrow Agent may take any action required by any law or regulation applicable to Escrow Agent including, without limitation, freezing or blocking funds. Transaction screening may result in delays in delays in the posting of transactions.

**Abandoned Property.** Escrow Agent is required to act in accordance with the laws and regulations of various states relating to abandoned property, escheatment or similar law and, accordingly, shall be entitled to remit dormant funds to any state as abandoned property in accordance with such laws and regulations. Without limitation of the foregoing, notwithstanding any instruction to the contrary, Escrow Agent shall not be liable to any Party for any amount disbursed from an account maintained under this Agreement to a governmental entity or public official in compliance with any applicable abandoned property, escheatment or similar law.

**Information.** The Parties authorize the Escrow Agent to disclose information with respect to this Agreement and the account(s) established hereunder, the Parties, or any transaction hereunder if such

disclosure is: (i) necessary in the Escrow Agent's opinion, for the purpose of allowing the Escrow Agent to perform its duties and to exercise its powers and rights hereunder; (ii) to a proposed assignee of the rights of Escrow Agent; (iii) to a branch, affiliate, subsidiary, employee or agent of the Escrow Agent or to their auditors, regulators or legal advisers or to any competent court; (iv) to the auditors of any of the Parties; or (v) required by applicable law, regardless of whether the disclosure is made in the country in which each Party resides, in which the Escrow Account is maintained, or in which the transaction is conducted. The Parties agree that such disclosures by the Escrow Agent and its affiliates may be transmitted across national boundaries and through networks, including those owned by third parties.

**THE FOLLOWING DISCLOSURES ARE REQUIRED TO BE PROVIDED UNDER APPLICABLE U.S. REGULATIONS, INCLUDING, BUT NOT LIMITED TO, FEDERAL RESERVE REGULATION D. WHERE SPECIFIC INVESTMENTS ARE NOTED BELOW, THE DISCLOSURES APPLY ONLY TO THOSE INVESTMENTS AND NOT TO ANY OTHER INVESTMENT.**

**Demand Deposit Account Disclosure**. Escrow Agent is authorized, for regulatory reporting and internal accounting purposes, to divide an escrow demand deposit account maintained in the U.S. in which the Fund is held into a non-interest bearing demand deposit internal account and a non-interest bearing savings internal account, and to transfer funds on a daily basis between these internal accounts on Escrow Agent's general ledger in accordance with U.S. law at no cost to the Parties. Escrow Agent will record the internal accounts and any transfers between them on Escrow Agent's books and records only. The internal accounts and any transfers between them will not affect the Fund, any investment or disposition of the Fund, use of the escrow demand deposit account or any other activities under this Agreement, except as described herein. Escrow Agent will establish a target balance for the demand deposit internal account, which may change at any time. To the extent funds in the demand deposit internal account exceed the target balance, the excess will be transferred to the savings internal account, unless the maximum number of transfers from the savings internal account for that calendar month or statement cycle has already occurred. If withdrawals from the demand deposit internal account exceeds the available balance in the demand deposit internal account, funds from the savings internal account will be transferred to the demand deposit internal account up to the entire balance of available funds in the savings internal account to cover the shortfall and to replenish any target balance that Escrow Agent has established for the demand deposit internal account. If a sixth transfer is needed during a calendar month or statement cycle, it will be for the entire balance in the savings internal account, and such funds will remain in the demand deposit internal account for the remainder of the calendar month or statement cycle.

**MMDA Disclosure and Agreement**. If MMDA is the investment for the escrow deposit as set forth above or anytime in the future, you acknowledge and agree that U.S. law limits the number of pre-authorized or automatic transfers or withdrawals or telephonic/electronic instructions that can be made from an MMDA to a total of six (6) per calendar month or statement cycle or similar period. Escrow Agent is required by U.S. law to reserve the right to require at least seven (7) days notice prior to a withdrawal from a money market deposit account.

**Unlawful Internet Gambling**. The use of any account to conduct transactions (including, without limitation, the acceptance or receipt of funds through an electronic funds transfer, or by check, draft or similar instrument, or the proceeds of any of the foregoing) that are related, directly or indirectly, to unlawful Internet gambling is strictly prohibited.

6707390.3B
1064253.03A-CHISR02A - MSW
6707390.5A
6707390.11A

**SCHEDULE 3**
**SELLER INFORMATION**

Seller Name: Phenom Holding Corp.

Address: 201 South Biscayne Bay Boulevard, Suite 800, Miami, Florida 33131

Taxpayer I.D. Number: ███████

28